BROWN, TRUSTEE, v. HAMES.

4-7311 179 S. W. 2d 689

Opinion delivered April 24, 1944.

*Thomas Harper,* for appellant.

*Ray Blair* and *G. L. Grant,* for appellee.

GRIFFIN SMITH, Chief Justice. Eureka Coal Company is a bankrupt, with Oscar T. Brown as trustee. N. B. Hames, (miner) alleging injuries by the fall of a rock, sued for $25,000 and recovered $750.

Appellant thinks (a) the Court erred in overruling its demurrer to the amended complaint, and (b) that it was entitled to a directed verdict.

The plaintiff's allegations and proof were that the nature of his work as a miner required installation of "props." He asked Rowe, his immediate superior, to supply them.

The trustee states the case this way: "Appellee encountered a dangerous part of the roof. He believed [a certain rock] was loose. He was 'leary of it' and thought it was unsafe. Yet, after he had determined it should be timbered and after he had asked for additional timbers and had been told by the foreman that there were no more, he continued working under the rock, and while so working it fell."

The defense would be good if contributory negligence or assumed risk could be pleaded; but neither defense is available if Rowe, while acting within the scope of his employment, failed to supply necessary timbers. *Southern Anthracite Coal Mining Company* v. *Rice,* 156 Ark. 94, 245 S. W. 805.

It is said that the amended complaint does not allege a willful violation of the mandatory statute of April 4, 1893. Pope's Digest, § 9327.[1]

---

[1] "The owner, agent or operator of any mine shall keep a sufficient amount of timbers when required to be used as props, so that the workmen can at all times be able to properly secure the said workings from caving in and it shall be the duty of the owner, agent or operator to send down all such props when required and deliver said props to the place where cars are delivered."

In determining whether conduct is willful or merely passive, (if a particular thing is directed by statute) an understanding of the end sought to be served must first be had. This is to be considered in its relation to facts of the transaction and all circumstances attending the event.

Expressed purpose of Act 125 of 1893 is to provide for the health and safety of persons employed in mines. The mandate is that those in charge of operations shall at all times keep on hand the necessary timbers. Here there is no evidence contradicting facts stated by appellee. Full effect of Hames' testimony is that he asked for the timbers through fear of a cave-in, and they were not supplied. It may be they were not available; but that does not satisfy the law. Prudence upon Rowe's part and appreciation of the statutory obligation required that if safety needs could not be met, work should have been suspended until a more propitious occasion.

Clearly the General Assembly recognized that underground mining was attended by physical hazards not common to many other occupations, and it sought to compel observance of certain precautions. By withholding the pleas of contributory negligence and assumed risk from those who failed to provide timbers, it was believed that "chance-taking" would be eliminated, or at least such conduct would be circumscribed.

The word "willful," in the sense insisted upon by appellant, does not appear in the statute; but, conceding it is implied, we arrive at the same end when the proof shows a refusal of the foreman to comply with the demand. It is not a satisfactory answer to say that the timbers were not available, and to make no other explanation. It was the Company's duty to have them, and there is no showing of impossibility or the intervention of an act of God

Affirmed.